EDWARD H. KUBO, JR.   #2499
United States Attorney
District of Hawaii

J. MICHAEL SEABRIGHT #3753
Assistant U.S. Attorney

WILLIAM L. SHIPLEY
Assistant U.S. Attorney
PJKK Federal Building
300 Ala Moana Blvd., Room 6-100
Honolulu, Hawaii  96850
Telephone:  541-2850
Facsimile:  541-2958
E-Mail: william.shipley@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 1 8 2005

at 3 o'clock and 30 min ___
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ABRAHAM NGUYEN MARTIN,   (01)<br><br>Defendant. | CR. NO. 05-00049-01 DAE<br>CR. NO. 04-00322-01 DAE<br><br>MEMORANDUM OF PLEA AGREEMENT<br><br>Date: March 16, 2005<br>Time: 10:30 a.m.<br>Judge: Kevin S.C. Chang |
|---|---|

## MEMORANDUM OF PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the UNITED STATES OF AMERICA, by its attorney, the United States Attorney for the District of Hawaii, and the Defendant, ABRAHAM NGUYEN MARTIN, and his attorney, MICHAEL A. WEIGHT, Assistant Federal Public Defender, have agreed upon the following:



EXHIBIT A

1. Defendant acknowledges that he has been charged by Information in Case No. CR-05-00049 DAE, with violating Title 18, United States Code, Sections 1343 (wire fraud) 1344 (bank fraud), 1029 (access device fraud), 1956 (money laundering), and Title 17, United States Code, Section 506 and 18 United States Code, Section 2319 (copyright infringement). The defendant also acknowledges two separate criminal forfeiture allegations in that Information. The defendant also acknowledges that he has been charged by a Superseding Indictment in Case No. 04-00322 DAE with violating Title 18, United States Code, Sections 1343 (wire fraud), 1344 (bank fraud), 1029 (access device fraud), 1708 (mail theft), 371 (conspiracy), and Title 17, United States Code, Section 506 and 18 United States Code, Section 2319 (copyright infringement). The defendant also acknowledges one criminal forfeiture allegation in the Superseding Indictment.

2. Defendant has read the charges against him contained in the Information and Superseding Indictment, and those charges have been fully explained to him by his attorney.

3. Defendant fully understands the nature and elements of the crimes with which he has been charged.

4. Defendant will enter voluntary pleas of guilty to Counts 9 and 10 of the Information, and Counts 9, 11, 12, 13, 16, 17, 20, 22, 27, 29, 30, 32, 34, 38, 40, 42, 44, 46, 48, 49, 50, 53, 54, 56, 57, 58, 59, 63, 68, 69, 71, 72, 75, 76, and 77 of the

Superseding Indictment. The defendant also agrees to forfeit the property set forth in the second forfeiture allegation contained in the Information (set forth in Paragraph 23), and the forfeiture allegation contained in the Superseding Indictment. The prosecution agrees to move to dismiss the remaining counts in the Information previously filed against him, and the remaining counts in the Superseding Indictment following his sentencing.

5. Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6. Defendant enters these pleas because he is in fact guilty of the crimes of bank fraud, access device fraud, money laundering, and copyright infringement as charged in the Counts of the Information and the Superseding Indictment to which he is pleading guilty, and agrees that these pleas are voluntary and not the result of force or threats.

7. Defendant understands that the penalties for the offenses to which he is pleading guilty include:

   a. For each count of bank fraud - up to 30 years imprisonment and a fine of up to $1,000,000, plus a term of supervised release of not more than five years;

   b. For each count of access device fraud - up to 10 years imprisonment and a fine of up to $250,000, plus a term of supervised release of not more than three years;

   c. As to Count 9 of the Information charging money laundering - up to 20 years imprisonment and a fine of up to $500,000, plus a term of supervised release of not more than three years;

   d. As to Count 10 of the Information charging copyright infringement - up to 5 years imprisonment and a fine of up to $250,000, plus a term of supervised release of not more than three years;

   e. As to the second forfeiture allegation contained in the Information and the forfeiture allegation contained in the Superseding Indictment, the forfeiture of property described in those allegations, which property constitutes proceeds Defendant received from the scheme to defraud as alleged in the Counts 44, 46, and 68 of the Superseding Indictment, and property the Defendant admits he used to facilitate the copyright infringement offense charged in Count 10 of the Information.

   f. Restitution pursuant to Title 18, United States Code, Section 3663A(a) to all persons directly harmed by the defendant's criminal conduct in the course of the scheme to defraud and the infringement on copyrights, in an amount to be determined by the Court at sentencing using the recommendation of the United States Probation Officer based on information obtained by the United States Probation Officer or provided by the United

States Attorney's Office, but in an aggregate amount not to exceed $500,000.

In addition, the Court must impose a $100 special assessment as to each count to which the Defendant is pleading guilty, for a total of $3700.00. Defendant agrees to pay $100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing. Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.

8.  Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charges to which Defendant is pleading guilty, and that these facts establish each element of the offenses in the Superseding Information to which the Defendant is pleading guilty:

a.  <u>Bank Fraud – Counts 9, 12, 13, 20, 22, 27, 29, 30, 32, 34, 38, 40, 42, 44, 46, 54, 59, 63, 68, 69, 72, 75, 76, and 77 of the Superseding Indictment</u>:

On the dates set forth below, the defendant knowingly and intentionally engaged in or caused others to engage in the described transaction with a financial institution, insured by

5

the Federal Deposit Insurance Corporation, involving an unauthorized and fraudulent access device check, or fraudulently altered or endorsed bank check:

| Count | Date | Transaction |
|---|---|---|
| 9 | 11/21/01 | Chase Bank access device check for $1,350.00, drawn on an account in the name of J.L., deposited into a Bank of Hawaii account payable to "Abraham Construction." |
| 12 | 12/17/01 | Chase Bank access device check for $1,350.00, drawn on an account in the name of J.L., deposited into a City Bank account payable to "Anna Jewelry." |
| 13 | 12/14/01 | MBNA access device check for $3,600.00, drawn on an account in the name of T.I., deposited into a Bank of Hawaii account payable to "Abraham Construction." |
| 20 | 6/20/02 | Fleet access device check for $3,000.00, drawn on an account in the name of S.N., deposited into an American Savings Bank account payable to "Anna Jewelry." |
| 22 | 8/7/02 | Discover Card access device check for $3,000.00, drawn on an account in the name of F.D., deposited into an American Savings Bank account payable to "Anna Jewelry." |
| 27 | 9/26/02 | First USA access device check for $4,900.00, drawn on an account in the name of M.K., deposited into an American Savings Bank account payable to "Abraham Construction." |
| 29 | 10/8/02 | Owens Corning Shared Services bank check for $3,079.17, payable to H.M., deposited into a City Bank account of Anna Jewelry. |
| 30 | 10/10/02 | Discover Card access device check for $4,500.00, drawn on an account in the name of K.O., deposited into a First Hawaiian Bank account payable to "AMN Enterprises." |
| 32 | 10/11/02 | Discover Card access device check for $3,120.00, drawn on an account in the name of K.O., deposited into a City Bank account payable to "Tan Tien Video." |

| 34 | 10/15/02 | Discover Card access device check for $5,000.00, drawn on an account in the name of K.O., deposited into a American Savings Bank account payable to "Abraham Construction." |
| 38 | 10/16/02 | Wells Fargo Bank access device check for $9,450.00, drawn on an account in the name of M.L., payable to "D.N.D. Jewelry" for the benefit of Anna Jewelry. |
| 40 | 10/16/02 | Wells Fargo Bank access device check for $18,850.00, drawn on an account in the name of M.L., payable to "D.N.D. Jewelry" for the benefit of Anna Jewelry. |
| 42 | 10/16/02 | Wells Fargo Bank access device check for $26,410.00, drawn on an account in the name of M.L., payable to "MBNA America" for the benefit of Abraham Martin. |
| 44 | 12/24/02 | Chase Bank access device check for $9,400.00, drawn on an account in the name of D.P., deposited into a First Hawaiian Bank for the benefit of Abraham and Anna Martin. |
| 46 | 12/24/02 | Sears National Bank access device check for $7,055.63, drawn on an account in the name of D.P., deposited into a First Hawaiian Bank for the benefit of Abraham and Anna Martin. |
| 54 | 12/26/02 | Capitol One Visa access device check for $8,000.00, drawn on an account in the name of J.O., deposited into a Hawaii National Bank account payable to "Abraham Construction." |
| 59 | 1/9/03 | First USA access device check for $10,000.00, drawn on an account in the name of T.E., deposited into a First Hawaiian Bank account payable to "AMN Enterprises." |
| 63 | 1/17/03 | American Express Centurion Bank access device check for $1,800.00, drawn on an account in the name of Y.J., deposited into a Hawaii National Bank account payable to "Abraham Construction." |
| 68 | 1/22/03 | American Savings Bank check for $330.96, drawn on an account in the name of J.T., fraudulently deposited as a payment on an automobile loan at First Hawaiian Bank in the name of Abraham Martin. |

| 69 | 1/23/03 | Fleet credit card access device check for $3,600.00, drawn on an account in the name of M.W., deposited into a Hawaii National Bank account payable to "Abraham Construction." |
| 72 | 1/27/03 | AT&T Universal Card credit card access device check for $5,400.00, drawn on an account in the name of C.D., deposited into a Bank of America account payable to "Wet Enterprises." |
| 75 | 1/29/03 | Bank of Hawaii check for $736.68, drawn on an account in the name of S.R., fraudulently altered to be made payable to "Able Consultants, and deposited into a Wells Fargo Bank account in the name of "Able Consultants." |
| 76 | 1/29/03 | Central Pacific Bank check for $393.97, drawn on an account in the name of J.W., fraudulently altered to be made payable to "Wet Enterprises", and deposited into a Bank of America account in the name of "Wet Enterprises." |
| 77 | 1/29/03 | Oahu One Credit Union check for $114.32, drawn on an account in the name of A.N., fraudulently altered to be made payable to "Wet Enterprises", and deposited into a Bank of American account in the name of "Wet Enterprises." |

    b.   <u>Access Device Fraud - Counts 11, 16, 17, 48, 49, 50, 53, 56, 57, 58, and 71 of the Superseding Indictment</u>:

On the dates set forth below, the defendant knowingly and with the intent to defraud did use an unauthorized access device in the described transaction, from which the defendant obtained something of value totaling $1000 or more, and in each instance the transaction effected interstate commerce.

| Count | Date | Transaction |
|---|---|---|
| 11 | 12/9/01 | MBNA access device check for $1,800.00, drawn on an account in the name of L.N., and fraudulently made payable to "Anna Jewelry." |
| 16 | 12/17/01 | MBNA access device check for $1,675.00, drawn on an account in the name of L.N., and fraudulently made payable to "Anna Jewelry." |
| 17 | 5/22/02 | Sears National Bank access device check for $3,000.00, drawn on an account in the name of D.M., and fraudulently made payable to "American Savings Bank." |
| 48 | 12/24/02 | Chase Bank access device check for $3,600.00, drawn on an account in the name of D.P., and fraudulently made payable to "Unity Trading, Inc.," as payment on a business debt of Anna Jewelry. |
| 49 | 12/24/02 | Sears National Bank access device check for $2,600.00, drawn on an account in the name of D.P., and fraudulently made payable to "Diamond Syndicate" as payment on a business debt of Anna Jewelry. |
| 50 | 1/5/03 | Sears National Bank access device check for $1,800.00, drawn on an account in the name of D.P., and fraudulently made payable to "Asian Desire" as payment on a business debt of Abraham Martin. |
| 53 | 1/9/03 | Sears National Bank access device check for $1,000.00, drawn on an account in the name of D.P., and fraudulently made payable to "Abraham Construction." |
| 56 | 12/17/02 | Chase Bank access device check for $1,410.00, drawn on an account in the name of N.I., and fraudulently made payable to "Capitol One," for the benefit of Abraham Martin. |
| 57 | 1/3/03 | Capitol One Bank access device check for $5,900.00, drawn on an account in the name of N.I., and fraudulently made payable to "Diamond Syndicate" as payment on a business debt of Anna Jewelry. |

| 58 | 1/7/03 | Capitol One Bank access device check for $3,600.00, drawn on an account in the name of N.I., and fraudulently made payable to "Asian Desire" as payment on a business debt of Abraham Martin. |
|---|---|---|
| 71 | 1/27/03 | Fleet access device check for $4,000.00, drawn on an account in the name of M.W., and fraudulently made payable to "DND Jewelry" as payment on a business debt of Anna Jewelry. |

      c.    Money Laundering - Count 9 of the Information:

On January 27, 2003, the Defendant deposited into the "Wet Enterprises" account at Bank of America an unauthorized and fraudulently drafted credit card account access check in the amount of $5,400.00, drawn on an AT&T Universal Card credit account in the name of C.D., which was stolen from the mail of C.D. in Honolulu, Hawaii. On or about February 12, 2003, the Defendant, knowing that the transaction was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the funds which had been obtained as a result of mail theft in the District of Hawaii, knowingly deposited or caused to be deposited a check in the amount of $5,000.00, drawn on the account of "Wet Enterprises" at Bank of America, into an account in the name of "Exotic Jewelries" at Cal Federal Bank, a federally insured financial institution affecting interstate commerce. This $5,000 check, in fact, involved the proceeds of mail theft as described above.

        d.   <u>Copyright Infringement – Count 10 of the Information</u>:

Between August 19, 2002, and February 15, 2003, the Defendant, without permission of the copyright holder, did manufacture and distribute several hundred copies of copyrighted movies and video programs with a retail value of more than $2500 through the Tan Tien Video store located at 185 King St., Honolulu, Hawaii, including copies of the copyrighted titles "Virtues of Harmony," "Empress Enters the Palace," "No. 8 Bus," and "The Royal Die Hard," among others. The Defendant's purpose in doing so was to realize commercial advantage and private financial gain through the revenue generated by such manufacture and distribution at Tan Tien Video.

        9.   Defendant agrees to immediately and voluntarily forfeit to the United States the properties which are listed in second Forfeiture Allegation contained in the Information (Paragraph 23), and Forfeiture Allegation contained in the Superseding Indictment, and to take all necessary actions to expeditiously implement this forfeiture and to pass clear title for said properties to the United States. These actions on Defendant's part include, but are not limited to, surrender of title, and the signing of a Preliminary Order of Forfeiture, a Final Order of Forfeiture, and any other relevant documents necessary to effect transfer of title to the United States.

Defendant represents and warrants to the government that he has no interest, either direct or indirect, whether held in his own name, or in the name of another person or entity, in any other property, real or personal, or in any other asset that would be subject to forfeiture on the basis of violations covered by this Plea Agreement. Defendant further represents and warrants that he currently possesses no interest in assets which could satisfy the substitute asset portion of the Superseding Information. Defendant understands and acknowledges that the government is relying upon Defendant's representations in entering into this Agreement.

Further, Defendant agrees that the forfeiture of the properties described in Forfeiture Allegations of the Information and Superseding Indictment shall not be treated as satisfaction of any fine, reimbursement of cost and imprisonment, or any other monetary penalty this Court may impose upon Defendant in addition to the forfeiture.

10. Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charges to which the Defendant is pleading guilty adequately reflect the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

11. Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of Defendant in connection with this matter:

    a. The Defendant agrees that the scope of the criminal conduct perpetrated by him and others described in the Information and Superseding Indictment includes numerous other uncharged fraudulent transactions beyond those specifically charged in the counts to which he is pleading guilty, including the conduct alleged in counts which are being dismissed pursuant to the terms of this plea agreement. The Defendant understands that the United States Attorney will provide information concerning the dismissed counts in both the Information and Superseding Indictment, as well as uncharged criminal activity, to the Court and the United States Probation Office, and that the Court and United States Probation Office may consider all aspects of such conduct in determining the appropriate sentencing range and sentence for the Defendant pursuant to the "Relevant Conduct" provisions of § 1B1.3 of the Sentencing Guidelines.

    b. The United States Attorney agrees that Defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to

Defendant. Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b)(2), if Defendant is otherwise eligible. The Defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to call and examine witnesses on those issues in the event that either the probation office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

12. The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.

13. Pursuant to Section 6B1.4 of the Sentencing Guidelines, the parties identify the following facts that are in dispute for the purpose of sentencing of Defendant in connection with this matter:

   None.

14. The Defendant is aware that he has the right to appeal the sentence imposed under Title 18, United States Code,

Section 3742(a). Defendant knowingly waives the right to appeal, except as indicated in subparagraph "b" below, any sentence within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined on any of the grounds set forth in Section 3742, or on any ground whatever, in exchange for the concessions made by the prosecution in this plea agreement.

      a.    The Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

      b.    If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the Defendant, the Defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined under Section 3742 and to challenge that portion of his sentence in a collateral attack.

      c.    The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of

the grounds stated in Title 18, United States Code, Section 3742(b).

15. The Defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines. The Defendant agrees that there is no promise or guarantee of the applicability or nonapplicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

16. The Defendant understands that pursuant to Guideline 6B1.1(c), this Agreement cannot be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary pursuant to Guideline 6A1.1. The Defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charges adequately reflect the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

17. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. If Defendant persisted in a plea of not guilty to the charges against him he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by a judge sitting without a jury. The Defendant has

a right to a jury trial.  However, in order that the trial be conducted by the judge sitting without a jury, the Defendant, the prosecution and the judge all must agree that the trial be conducted by the judge without a jury.

        b.    If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random.  Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges.  The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty.  The jury would be instructed that the Defendant is presumed innocent, and that it could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt.

        c.    If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the Defendant's guilt beyond a reasonable doubt.

        d.    At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the Defendant.  Defendant would be able to confront those prosecution witnesses and his attorney would be able to cross-examine them.  In turn, Defendant could present

witnesses and other evidence on his own behalf. If the witnesses for the Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

   e. At a trial, the Defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.

  18. Defendant understands that by pleading guilty, he is waiving all of the rights set forth in the preceding paragraph. Defendant's attorney has explained those rights to him, and the consequences of the waiver of those rights.

  19. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

  20. Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto. The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

  21. Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the

nature, scope and extent of Defendant's conduct regarding the charges against him, related matters, and any matters in aggravation or mitigation relevant to the issues involved in sentencing.

DATED: Honolulu, Hawaii, MAR 1 6 2005.

AGREED:

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

J. MICHAEL SEABRIGHT
Assistant U.S. Attorney

WILLIAM L. SHIPLEY
Assistant U.S. Attorney

ABRAHAM NGUYEN MARTIN
Defendant

MICHAEL A. WEIGHT
Attorney for Defendant

United States v. Abraham Nguyen Martin
Cr. No. 05-00049-01 DAE
"Memorandum of Plea Agreement"