ABRAHAM MARTIN
87158-022
Federal Prison Camp
3705 West Farm Road
Lompoc, CA 93436-2756

IN PRO SE PETITIONER

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
MAY 30 2007
at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIV. NO. CV06-00629 DAE/LEK |
| Plaintiff/Appellee, | CR. NO. 04-00322 DAE |
| | CR. NO. 05-00049 DAE |
| vs. | PETITIONER'S REPLY/TRAVERSE TO |
| | THE GOVERNMENT'S RESPONSE TO |
| ABRAHAM NGUYEN MARTIN, | HIS MOTION UNDER TITLE 28 U.S.C. |
| | § 2255 TO VACATE, SET ASIDE, OR |
| Petitioner/Defendant. | CORRECT SENTENCE; DECLARATION OF |
| | ABRAHAM MARTIN; EXHIBITS "A-E" |
| | CERTIFICATE OF SERVICE |

PETITIONER'S REPLY/TRAVERSE TO GOVERNMENT'S RESPONSE TO
HIS MOTION UNDER 28 U.S.C. § 2255

COMES NOW, Abraham Martin, hereinafter "Martin", petitioner pro se in the above-mentioned civil case, and hereby respectfully submits to this Honorable Court his Reply/Traverse to the government's Response to his Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence for a Person in Federal Custody.

This Reply is brought forward pursuant to Rule 5(d) of the Rules Governing 2255 Proceedings, and is predicated on the files and records herein, appended Exhibits, and Declaration of Abraham Martin.

<u>REPLY/TRAVERSE TO GOVERNEMTN'S RESPONDE TO 2255</u>

## I. PREAMBLE

A. <u>PETITIONER'S DISADVANTAGES IN CUSTODY</u>

Petitioner Martin, having been denied appointment of counsel to effectively challenge his excessive sentence under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence for a Person in Federal Custody, has been confronted with miscellaneous disadvantages as follows:

1. Martin is indigent, cannot afford paid counsel to represent him, and the miscellaneous costs of typewriter ribbon, correction tape, exrox copies, postage, etc ... to effectuate a meaningful and meritorious appeal.

2. Martin is old, reaching the age of 64 on June 26, 2007 (real age), and has been suffering from various illnesses such as backache [sustained from previous three (3) car accidents in Hawaii, and in another incident when a 90-pound concrete vase fell on his back], stomach ache, arthitis, stress and strain, etc ..

3. Martin is not trained in the law. He only got involved with criminal law since November 2006, in an effort to overturn the miscarriage of justice which was imposed on him during the entire proceeding. Martin has been experiencing difficulties dcing law research and writing up decent and effective court pleadings.

4. The law library at Lompoc Federal Prison Camp is inadequate and there is no jail lawyer or legal clerk available to render assistance to Martin in his defense preparations. "Prisoners have a fundamental constitutional right of access to the courts, and must be provided with adequate law libraries or adequate assistance from persons trained in the law." **Bounds v. Smith, 430 US 817,**

52 LEd 2d 72, 97 SCt 1401 (1977). The court also held that "Inmates enjoy access to law libraries and assistance of inmate law clerks, as guarantee of their due process right to access to the court." See **Gomez v. Verson, 255 F.3d 1118 (9th Cir. 2001).**

5. Due to involuntary servitude and other miscellaneous rules and regulations imposed by the BOP, Martin does not have adequate time to prepare an effective defense.

B. VINDICTIVE PROSECUTION

1. Petitioner Martin was originally charged in an Indictment of 27 counts, on or about August 25, 2004. This indictment contained a multiplicity of counts, improperly charging the same offense in several counts, and therefore violating the Fifth Amendment protection against double jeopardy. This indictment also charged Martin with ten (10 ?) counts of wire fraud, which the prosecutor knew that Luu committed those, Luu being the arch criminal and FBI informant (the FBI kept Luu's CPU for 4 months during the time Luu was in custody at the OCCC on Dillingham Boulevard). One of the prosecution's sentencing allegations in this indictment was the enhancement for leadership role. Martin pleaded NOT guilty to all charges, through a federal public defender, Mr. Michael Weight.

2. Martin was then taken to the court on or about February 1, 2005, without knowing the reason. Again, he was facing a new criminal case number, 05-00049 DAE, the Information. He was charged de novo, various counts of wire fraud which the government knew Luu did it, the grand master criminal. Martin vehemently denied these charges, since he never committed the wire fraud offense.

3. The prosecutor then threatened with a Superseding Indictment which still contained several counts of wire fraud (all Luu's),

- 2 -

which Martin vehemently denied for the third time in a row. Martin, however, would plead guilty to other counts in this Superseding Indictment despite the fact that Martin was not afforded adequate time to review it and some counts were highly questionable. The prosecutor conceded and a plea agreement would be drawn up by him. The majority of the counts represents the same kind of offense, which is access device fraud, but the prosecutor indicates many of them as bank fraud, to exasperate the offense. Here again, it shows vindictiveness on the part of the prosecutor, and a violation of the law.

4. The plea agreement was drawn up by the prosecutor with all the terms/conditions dictated by him, all favorable to the government. Martin, again, was not given adequate time to review it, or actually could not object to any of its terms/conditions. He was given a copy of the plea agreement while in the holding cell in the basement of the Federal Building, waiting to be escorted to the court room. Within the time frame of 30 minutes, and being a non-lawyer, Martin tried to understand the plea agreement the best he could. He expected that the prosecutor observed the law in writing up the plea agreement, with all terms/conditions spelled out clearly. And above all, Martin depended upon his defense counsel for his effective assistance in this matter.

The prosecutor, in a scheme and artifice to circumvent the law, added "<u>determined by the court</u>" in his plea agreement, pursuant to the requirements of 18 § 3742(a)(3) so as to thwart the Petitioner from all avenues of appeal, except claim of ineffective assistance of counsel in motion 2255 attack. This is a clear

violation of the Constitution and Due Process Clause provisions of the Fifth and Fourteenth Amendments.

5. In a scheme and artifice to mislead the court, the prosecutor provided the Probation Office with perjured testimony from Luu, a mastermind with 25 years of nefarious criminal activities as explicated in Exhibit "C" attached to Motion 2255. Moreover, the prosecutor also provided the Probation Office with wire fraud counts (all Luu's) <u>which Martin vehemently rebutted THREE (3) TIMES in three different court hearings</u>; which misconduct resulted in a 2-level enhancement [USCG § 3B1.1, PSR paragraph 126(d), offense involving sophisticated means) and as excepted by Martin in his Amendment to his Motion 2255. This unconstitutionally provided information, along with other unadmitted, unverified counts and relevant conduct information resulted in an **actual loss** volume increase from approximately $110,000 to over $228,000. This prosecutorial misconduct prejudiced the defendant and caused a severe increase of 4 levels by itself (from 8 levels to 12 levels, an increase of 4 levels). This therefore behooves an evidentiary hearing to protect "interests of justice" and to quash prosecutorial over-exaggerated representments, which occured through/out the criminal proceeding, violating the Fifth and Fourteenth Amendment rights. "Law enforcement techniques that are shocking to the universal sense of justice mandated by due process clause violate the Constitution." **U.S. v. Nyhuis**, 211 F.3d 1340 (11th Cir. 2000). See also **U.S. v. Jannottie**, 673 F.2d 578, 614 (3rd Cir. 1982). "Prosecutor does not represent an entity whose interests include winning at all costs; prosecutor's client is society, which seeks justice, not victory." **U.S. v. Doe**, 860 F.2d 488 (1st Cir. 1988). The prosecutor thus violated his

own plea agreement also. "The government has an obligation to adhere strickly to the terms of the bargain it strikes with defendants." **U.S. v. Rivera**, 357 F.3d 290 (3rd Cir. 2004); **U.S. v. Garcia-Meza**, 315 F.3D 683 (6TH CIR. 2003); **U.S. V. KIRK**, 70 F.3D 791 (5th Cir. 1995)

6. In a scheme and artifice to mislead the court, the prosecutor also painted a portrait of a notorious mastermind criminal (who is Luu) and overlaid it over Martin. See **U.S. v. Ollivierre**, 378 F.3d 412 (4th Cir. 2004). Thus the prosecutor allowed himself to use perjured testimony from Luu (an arch criminal and FBI informant) to obtain conviction upon Martin, violating 18 U.S.C. § 201(c)(2). Regarding unauthorized use of perjured testimony, the En Banc Tenth Circuit opinion in **U.S. v. Singleton**, 144 F.3d 1343 held that 18 U.S.C. § 201(c)(2) does not apply to the government because government prosecutors are inseparable from the sovereign. Conversely, prosecutors cannot use this statute as a <u>shield</u> for acts that are not indeed authorized by the sovereign. Thus the prosecutor can be held liable for bringing a witness to provide false testimony for he is acting **ULTRA VIRES** and is therefore no longer the **ALTER EGO** of the **SOVEREIGN** and is divested of the protective mantle of the government. See **Singleton**, supra, at 11-12.

The above discussed activity behooves the court to set the matter for an evidentiary/ hearing And if the assertion is proven true, petitioner's conviction should be reversed, due to reprehensible misconduct of the prosecution.

7. In a scheme and artifice to deceive and mislead the court and thwart the "interests of justice", the prosecutor intentionally conceals the true identity and nefarious criminal activities of Luu, an FBI informant, and his powerful role as ring leader,

- 5 -

manager, supervisor of at least 50 or more criminals in Hawaii, and has entrapped quite a few, as explicated in Exhibit "C" of Motion 2255. Martin, in his aberrancy and inadvertency, fell victim to Luu's classic entrapment scheme, mainly from June 2002 to January 2003, a period of SEVEN (7) months or thereabout. See **U.S. v. Avila**, 95 F.3d 887 (9th Cir. 1996) and **U.S. v. Varela**, 993 F.2d 686 (9th Cir. 1993).

8. Basically Martin only pleaded guilty to 35 counts of the Superseding Indictment, and 2 counts of the Information which the prosecutor added on to the plea, to exasperate the offense. Martin <u>did not plead guilty to being a ring leader</u> of anyone at all, not even his wife, Anna Martin, co-defendant, since Martin acted alone in all the offenses he committed. In a Vietnamese family, the husband makes all the decisions for his family, and the court agreed. See **U.S. v. Martin**, Cr. No. 90-00105 SOM (1999), in which Martin's wife was not indicted since Martin directed all affairs of his family. See Exhibit "C" attached.

9. The prosecutor is in the business of over-exaggeration. He told the court in the first bail hearing that Martin opened 40 accounts on the mainland. In the third bail hearing, he also told the court that Martin had been at the FDC Honolulu for 9 months. Both statements are untrue. See transcripts of proceedings, which Martin does not have due to indigency. In the transcript of proceeding at sentencing, attached to the government' Response to Motion 2255, numerous over-exaggerated statements were made by the prosecutor. This behooves the court to grant an evidentiary hearing to reveal the truth, otherwise "interests of justice" will be impaired.

10. In ferreting through all the multitude of records of this

- 6 -

case, one can assert that, by a preponderance of evidence, Martin only used the gain (approximately $40,000 to $50,000, the other half given to Luu as the ring leader and supervisor of the offense) for his personal expenses. The gain was **not** used in furtherance of another crime. See **U.S. v. Parker**, 364 F.3d 934 (8th Cir. 2004). Also, the court held that "offense of money laundering money requires finding of effect on interstate commerce." **U.S. v. Evans**, 285 F.3d 664 (8th Cir. 2002).

The prosecutor thus violated the Constitution by presumptively charging Martin with money laundering offense. "Government must prove that venue was proper as to each count charged." **U.S. v. Wood**, 364 F.3d 704 (6th Cir. 2004). Moreover, "Conviction may not be obtained simply by piling inference upon inference. See **U.S. v. Vallo**, 238 F.3d 1242 (10th Cir. 2001).

## II. REPLY/TRAVERSE TO THE GOVERNMENT'S RESPONSE

Petitioner Martin hereby incorporates by reference his Motion 2255, Amendment to this Motion, and the foregoing Preamble into this section.

Petitioner avers that the sentence imposed is in violation of the Constitution and the law of the United States, which involved a fundamental defect causing a complete miscarriage of justice.

The petitioner, without elaborating further details of the grounds for relief in his Motion 2255, wishes to streamline his Reply/Traverse to a concise discussion possible.

A. GROUND ONE: BOOKER ISSUE

1. The prosecutor breached his own plea agreement:

As discussed in the foregoing section, the prosecutor breached his own plea agreement, not Martin. Booker issue therefore

- 7 -

still holds.

2. <u>Petitioner is still entitled to Relief Pursuant to Booker</u>

a. As discussed earlier, the prosecutor breached his own plea agreement, by mischievously using unauthorized testimony from Luu, an FBI informant and deviating from the plea agreements terms/conditions. The PSR objected to the government's enhancing statement. The court erroneously relied upon inaccurate and unverified information in the PSR, which had been supplied by the government, to enhance Martin for role in the offense. In 1999, the Supreme Court in **Jones v. U.S.**, 526 US 227, 243 n.6 held that: "under the Due Process Clause of the Fifth Amendment, and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."

In **Castillo v. U.S.**, 120 S.Ct. 2095 (2000), the Supreme Court held that punishment enhancing factors are to be considered 'elements' of an aggravated, separate statutory offense -- and that such elements are to be alleged in the indictment, proved to the jury at trial, and found by the jury beyond a reasonable doubt before the "enhanced sentence may constitutionally be applied."

In **Apprendi v. New Jersey,** 530 US 466 (2000): the Supreme Court held: " Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id., at 490.

Furthermore, the Constitution prohibits allowing a judge alone to make a finding that raises the sentence beyond the sentence that could have lawfully been imposed by reference to facts

- 8 -

found by the jury or admitted by the defendant. See **Booker**.

Also, the primary directive in 18 U.S.C § 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necesasary .....", **Booker**, 125 S.Ct. at 757. See also, **US v. Ameline**, 400 F.3d 646, 655-56 (9th Cir. 2005). A district court cannot rely on inaccurate information in sentencing a defendant, a sentence based on inaccurate information must be set aside, and evidence offered in support of an enhancement under Sentencing Guidelines must be reliable. See **U.S. v. Polson**, 285 F.3d 563 (7th Cir. 2002).

Finally, Martin suffered miscarriage of justice and was imposed a sentence which was extraordinarily excessive for his crime, for his minor role (Luu being the ring leader and organizer) and special circumstances. "Eightth Amendment forbids extreme sentences that are grossly disproportionate to the crime." **U.S. v. Barajas-Avalos**, 359 F.3D 1204 (9TH CIR. 2004).

B. <u>GROUND TWO: INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Petitioner hereby incorporates his Motion 2255, Amendment to this motion, and all foregoing argument/discussion into this section, for reference.

Petitioner already demonstrated that he was denied effective assistance of counsel, which fact violated his Sixth Amendment rights. In the following discussion, petitioner will concentrate on the <u>second prong</u> of the test, as per **Strickland v. Washington**, 466 US 668, 80 L.Ed 2d 674, 104 S.Ct. 2052 (1984), which is 2) reasonable possibility of different result with effective counsel.

a) <u>Failure to object to trial postponements</u>

If the defense counsel was effective and objected to trial

- 9 -

postponements as he should have done, the trial date would have been set for on or about November 5, 2004. Since defense counsel was over-whelmingly over-loaded with 60 cases and became ineffective out of his will, defendant was prejudiced accordingly. If the trial were held at the end of the 70-day period provided under 18 U.S.C. § 3161, defendant would have had a good chance to have the indictment dismissed. He would have had the opportunity to seek effective counsel "on the outside" for his defense, and to vindicate his wife, co-defendant Anna Martin, who was implicated by the government in the indictment. See Exhibit "D, E" attached.

b) <u>Failure to Object to Government's Discovery</u>

Despite the defendant's analysis of the government's discovery, which contains mostly Luu's fruits of crime, the defense counsel failed to object to it. Luu [an FBI informant and a grand master criminal] had been in Hawaii for about 6 years; was ring leader, manager and supervisor of at least 50 or more criminals in Hawaii. He was protected to do crime, inflicting hundreds of victims and hundreds of thousands of dollars in losses. His fruits of crime were unlawfully imposed upon Martin in the government discovery. Martin was therefore prejudiced and suffered miscarriage of justice as a /result of this [a total of 8 level increase: 4 + 2 + 2, the last 2 levels being the enhancement for role in the offense]. See Exhibit "C" attached to Motion 2255. "Forbidding defendant's inquiry into witness's bias can violate confrontation clause." See **Mason v. Mitchell**, 320 F.3d 604 (6th Cir. 2003). and "Essence of a violation of the Confrontation Clause is the present/ation of an accusation against the defendant without presenting the accuser." **Ryan v. Miller**, 303 F.3d 231 (2nd Cir. 2002),

- 10 -

c. Failure to Request Discovery of Hung Chi Luu, ring leader

First of all, petitioner would like to point out the prosecutor's over-exaggeration on page 13:

> "... Discovery provided to the defense by the government catalogued joint criminal activity of the Defendant and Luu. That information was set forth in exhaustive detail by the Probation Officer in the Presentence Report.
> The Defendant admitted in his change of plea to participating in the joint criminal activity, as well as to criminal activity with his wife/co-defendant, and criminal activity in which he alone participated."

The prosecutor allowed himself such an over-exaggerated statement which is far from the truth. He practically put words in the petitioner's mouth. This behooves the court to grant an evidentiary hearing, without which the "interests of justice" are totally impaired. All true facts are explicated in the Amendment to Motion 2255, and again in the Preamble section of this Reply. "Federal Prosecutors may not resort to improper means or argument in order to obtain a conviction." **U.S. v. Figueroa-Encarnacion**, 343 F.3d 23 (1st Cir. 2003). Also, "The government has a special responsibility to ensure the integrity of the criminal judicial process by living up to the code of professional ethics and fair play at all times." See **U.S. v. White**, 222 F.3d 363 (7th Cir. 2000).

As discussed earlier, a complete discovery of Luu will convince the court that this FBI informant was indeed the ring leader, manager, supervisor of at least 50 criminals in Hawaii, and the court erred in enhancing the defendant 2 levels at sentencing. In **U.S. v. Deering**, 179 F.3d 592 (6th Cir. 1999), the court held: "Government interference with defendant's right to present a defense, including calling defense witnesses, violates the Constitution." Luu was not indicted and was using a scheme and artifice

- 11 -

to entrap many people before Martin, and after Martin. Martin only held a minor role in the offenses he committed, since Luu provided him with everything else, including all the directions and instructions to execute the access checks.

If Mr. Weight had requested complete discovery of Luu, the court would not have erred in relying on the inaccurate information which were supplied to the Probation Office. The Probation Office itself did not perform any investigation of its own, to arrive at the truth and true facts, and the petitioner's defense counsel did not object to any of the statements contained in the PSR, therefore his assistance was deficient, and the petitioner was prejudiced.

d. Failure to File Motions

Despite petitioner's numerous correspondence to his defense counsel explaining and analyzing the case, not a single defense motion was filed; therefore ineffective assistance of counsel.

The motion to suppress evidence has merit, since the search warrant as obtained by the USSS special agent Roberts was **not** based upon true facts, but slanderous information as provided by Luu who did not possess any credibility whatsoever (see HPD reports and Exhibit "C" of Motion 2255). In **Hunter v. Namanny**, 219 F.3d 825 (8th Cir. 2000), the court held: "Fourth Amendment requires warrant application to contain truthful factual showing of probable cause.". Also, the warrantless search and seizure by the FBI violated the Fourth Amendment. Moreover, the government special agents chased everybody out of the house, so that they could perform an unlawful search and seizure, as claimed as Ground III in Motion 2255.

If the evidence had been suppressed, the government

- 12 -

would not have been able to charge count 10, copyright infringement, of criminal number 05-00049 DAE, with inaccurately inflated information and statements. Both the defendant and co-defendant (who did not do any tape copying but was implicated in this offense by the prosecution, just because she is defendant's wife) would be relieved by this particular count, especially the co-defendant.

e. <u>Failure to Advise Defendant of Right to Appeal</u>

In ferretting through the sentencing transcript, Martin admits that Mr. Michael Weight did a wonderful job here. Martin only wishes that he had done so prior to sentencing. It was too late, the prosecutor already succeeded in his scheme and artifice to mislead the court by improper means; such as unauthorized use of perjured testimony, unethical supply of inaccurate and unverified information to the Probation Office; unlawful imposition of **not guilty** counts (wire fraud, all Luu's) which petitioner vehemently denied **three (3) times in 3 different hearings**; unethical double-counting (see **U.S. v. Jarman,** 144 F.3d 912 (6th Cir. 1998) and **U.S. v. Compton,** 82 F.3d 179 (7th Cir. 1996), which hold: "Double-counting occurs when identical conduct is described in two different ways so that two sentencing adjustments apply."); concealment of evidence favorable to the defense (Luu's discovery as termed co-conspirator by the government); unethical and/or unlawful supply of inaccurate, unverified relevant conduct information to the Probation Office; and others to be named later.

Therefore, the court erred in its determination, based on inaccurate information contained in the PSR, which was supplied by the prosecutor, and unobjected by defense counsel. Ineffective assistance of counsel thus occured as a result.

Furthermore, the court erred in its upward sentencing departure without notice, thus violating due process. See **U.S. v. DePace,** 120 F.3d 233 (11th Cir. 1997). Also, "Defendant is entitled to receive notice of both factual and legal grounds on which district court is contemplating upward sentence departure." **Burns v. U.S.,** 501 US 129, 115 L.Ed 2d 123, 111 S.Ct 2182 (1991), **U.S. v. Hinojosa-Gonzalez,** 142 F.3d 1122 (9th Cir. 1998) and **U.S. v. Himler,** 355 F.3d 735 (3rd Cir. 2004).

The court also erred in its determination of an enhancement for role in the offense. With respect to Luu, "Conspiracy conviction is not possible if defendant conspired only with government agents or informants,", Luu being an FBI informant. With respect to Martin's wife, "Evidence of association or acquaintance, though relevant, is not enough by itself to establish conspiracy." Moreover, in 1999, the Supreme Court in **Jones v. U.S.,** 526 US 227, 243 n.6 held that: "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantee of the Sixth Amendment, any factor (other than a prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.". See also **Castillo v. U.S.,** 120 S.Ct 2095 (2000) in which the Supreme Court held that [Punishing enhancement factors are to be considered 'elements' of an aggravated, separate statutory offense -- and that such elements are to be alleged in the indictment, proved to the jury at trial, and found by the jury beyond a reasonable doubt before the "enhanced sentence may constitutionally be applied."].

As demonstrated, petitioner was prejudiced by the ineffective assistance of counsel with regard to appeal, either direct or

- 14 -

motion 2255. In walking away from the court room after sentencing, Mr. Weight told Martin: "Abe, you'll do **only five years**", as a salvageable consolation which Martin can never forget. Five years or five days?

f. <u>Failure to Consult with Defendant Regarding Court Documents</u>

Martin is a non-lawyer, not trained in the law. Even though Martin acquired some knowledge of the law by spending 5 minutes a day reading law books at FPC Nellis in the year 2000 in an effort to fight back fierce litigation lawyers of Wong, Feldman and Kim, a law corporation in a civil lawsuit. A smattering knowledge of law by self-study in civil matters certainly does not help Martin understand criminal law at all, especially the implications of it. For example, Mr. Weight should have explained to Martin about the money laundering charge, and should have objected to it. "Write a check from one bank and deposit it into another bank is **not** quite money laundering offense.", as Martin has leanred at FPC Lompoc. "A money laundering conviction cannot stand where there is no evidence that the proceeds were used for anything other than personal expenses." **U.S. v. Parker**, 364 F.3d 934 (8th Cir. 2004). Also, "Offense of money laundering requires finding of effect on interstate commerce." See **U.S. v. Evans**, 285 F.3d 664 (8th Cir. 2002).

Another example is the prejudiced plea agreement. Mr. Weight should have pointed out to Martin that " .... <u>determined by the court</u> ..." to thwart the defendant from ALL avenues of appeal is unconstitutional, and a circumvention of 18 U.S.C.§3742(a) and the Due Process Clause of the Fifth Amendment. The prosecutor was therefore at liberty to impose any kind of offense he wanted to, unobjected by defense counsel and unquestioned by the court.

- 15 -

In **U.S. v. Wood,** 364 F.3d 704 (6th Cir. 2004), the court held that: " Government must prove that venue was proper as to each count charged." Mr. Weight thus failed to point out to the defendant the meaning and the implications of all charges. Defendant was therefore prejudiced and suffered miscarriage of justice, due to vindictive prosecution.

g. <u>Failure to demand Fair Bargaining</u>

Defendant was not afforded a fair bargaining period or required by law. All terms and conditions of the plea agreement were set and imposed by the prosecutor, unobjected by defense counsel. Due to time constraint, petitioner will supply his traverse to the government's response in this sub-section at a later date.

h. <u>Failure to Devote Time to Defendant's Case</u>

First of all, the prosecutor failed to attach the Affidavit of Mr. Michael Weight as mentioned, despite the fact that Mr. Weight had ample time to execute this document (Motion 2255 was filed on November 24, 2006). Again, the prosecutor over-exaggerated the allegations in this sub-section, and seemed to put words into Mr. Weight's mouth also. On the contrary, defendant Martin "developed the habit of sending numerous correspondence to Mr. Weight, explaining and analyzing the case", which fact is confirmed by the Federal Public Defenders' Office, which sent a myriad of papers and documents to the defendant at his request, in September and October 2006.

Since Mr. Weight was assigned 60 cases, it is only reasonable, logical and rational to induce that Mr. Weight would not be able to devote adequate time to any particular inmate, based on his busy schedule to attend court hearings, visit inmates at the FDC Honolulu, etc ... for a salaried government official. No one can.

- 16 -

### C. THE DEFENDANT HAS WAIVED BY HIS UNCONDITIONAL GUILTY PLEA ANY CHALLENGE TO NON-JURISDICTIONAL ERRORS OR DEFECTS IN THE GOVERNMENT'S CASE

First of all, the above heading is somewhat over-exaggerated. The defendant **did not** agree to an **unconditional plea**, but the plea as produced by the prosecutor, and unopposed by defense counsel. Therefore, all the argument and law cases as presented by the prosecutor seem to be irrelevant. In ferretting through the plea agreement, waiver of rights was stipulated in paragraphs 14 and 17 only. None of the language in the plea agreement mentioned **"unconditional guilty plea"** or **"challenge to non-jurisdictional erros or defects in the government's case"**.

Therefore, there is no need for the petitioner to reply/traverse to this section. In **U.S. v. Quach**, 302 F.3d 1096 (9th Cir. 2002), the Court of Appeals construes ambiguities in a plea agreement in favor of the defendant. See also **U.S. v. Fitch**, 282 F.3d 364 (6th Cir. 2002); **U.S. v. Podde**, 105 F.3d 813 (2nd Cir. 1997). Moreover, "District Court has broad discretion in fashioning remedy for government's breach of plea agreement.", as discussed in the foregoing Preamble of this Reply. See **U.S. v. Chiu**, 109 F.3d 624 (9th Cir. 1997).

Besides the fact that the prosecutor breached his own plea agreement as discussed earlier, the petitioner can claim that the plea agreement is invalid due to ineffective assistance of counsel, due to coercion [since the defendant refused to plead guilty to wire fraud charges (all Luu's) for the second time, the prosecutor threatened with a voluminous Superseding Indictment, and he did], thus violating defendant's constitutional rights. See **Kercheval v. U.S.**, 274 US 220, 71 L Ed 1009, 47 S Ct 582 (1927); **Parker v. North Carolina**, 397 US 790, 25 L Ed 785, 90 S Ct 1458 (1970); **Brady v. U.S.**, 397 US

742, 25 L Ed 2d 747, 90 S Ct 1463 (1970). Last but not least, Martin can also claim that the plea agreement is invalid due to the fact that the accused did not understanding the consequences of a guilty plea. See **Kercheval**, **Brady** and **North Carolina v. Alford**, 400 US 25, 27 L Ed 2d 162, 91 S Ct 160 (1970) (by implication). Attention is called to the fact that by amendment in 1966, the requirement was added to Rule 11 of the Fed. R. Crim. P., that a court shall not accept a plea of guilty without first determining that the plea is made with the understanding of the consequences of the plea. **Id**.

It is worth noted here that the petitioner spotted another prosecutorial over-exaggeration: (last paragraph on page 21)

1. <u>177 VCR's</u>: since Martin and Martin only did copies of the VHS tapes, and due to time constraint, he had to use that many VCR's to perform the operation one time a day only, from a total of 15 to 17 original VHS tapes per week. There were 12 set-ups which Martin could use at any one time. The VCR's themselves became defective in a short time, and new VCR's had to be bought, amounting to a total of 177 as mentioned.

2. <u>thousand of blank video cassettes for making copies</u>: Martin had exactly 120 blank tapes at the time of seizure, bought from Sam's Club. Martin also had approximately 150 re-cycled tapes to be re-used. FBI agents did not know which tapes were original and which tapes were bootlegged, so they took all the original tapes and called them bootlegged. See Exhibit "E" attached.

### III. CONCLUSION

Based on the foregoing reply/traverse to the governement's Response to petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence for a Person in Federal Custody,

the petitioner respectfully submits that his motion 2255 be granted, and the petitioner entitled to relief (level 15) as requested, or any other relief as the court deems proper, for the interests of justice.

DATED:   Lompoc, California this 23rd May 2007

Respectfully submitted,

*[signature]*

_____
Abraham Martin
Petitioner Pro Se

- 19 -