ORIGINAL

ABRAHAM MARTIN
87158-022
Federal Prison Camp
3705 West Farm Road
Lompoc, CA 93436

IN PRO SE APPELLANT

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

DEC 28 2007

at __ o'clock and ___ min. __ M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

ABRAHAM NGUYEN MARTIN,          )    CV. NO. 06-00629 DAE-LEK
                                )    CR. NO. 04-00322 DAE
            Appellant,          )    CV. NO. 06-00632 DAE-LEK
                                )    CR. NO. 05-00049 DAE
        vs.                     )    **NINTH CIRCUIT NO. 07-16756**
                                )
UNITED STATES OF AMERICA,       )    ANALYSIS OF THE DISTRICT
                                )    COURT'S ORDER DENYING
            Appellee.           )    APPELLANT'S MOTION FOR
                                )    COA; EXHIBITS "A - D";
                                )    CERTIFICATE OF SERVICE
                                )
————————————————————————————    )

ANALYSIS OF THE DISTRICT COURT'S ORDER DENYING
APPELLANT'S MOTION FOR COA

COMES NOW, Abraham Nguyen Martin, hereinafter "Martin",

appellant in propria persona in the above-mentioned civil action,

and respecfully submits, in good faith, to this Honorable Court

his Analysis of the District Court's Order denying his Motion for

COA, based on the denial of Martin's habeas corpus petition,

Title 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence

for a Person in Federal Custody, filed on August 16, 2007.

This analysis of the court order is based on the files

and records of the civil proceeding, points and authorities,

and Martin's declaration herewtih appended.

## ANALYSIS OF THE DISTRICT COURT'S ORDER DENYING
## APPELLANT'S MOTION FOR COA

**A. ERRORS AND OMISSIONS**

1. On page 1, the district court failed to mention the "Information", the second charging document of 10 counts brought about by the prosecutor, before an 80-count Superseding Indictment was returned. Martin pled "not guilty" due to Luu's wire fraud charges unlawfully imposed.

2. On page 2 of the Order, the district court stated:"**On August 24, 2006, the Ninth Circuit affirmed Petitioner's conviction and sentence upon Petitioner's appeal.**" on line 8 and 9. Upon review of Martin's file from Ninth Circuit, it is found out that this is a distorted fact. The district court simply "put words in the Ninth Circuit's mouth" and evidently prejudiced Martin in his appeal to Ninth Circuit. Since Martin was ignorant about criminal law last year after self-surrender to Lompoc FPC, but wanted to appeal his excessive sentence, he wrote to the Clerk of the Court of Appeals on August 20, 2006 (received on 8/23/2006) imploring the possibility of appealing his illegal sentence. See Exhibit "A" herewith attached. The non-conforming "Notice to Appeal" was construed by the Ninth Circuit as a "Direct Appeal" which was dismissed as **"untimely"** ("The Notice of appeal in a criminal matter must be filed within ten days after entry of judgment.", the Circuit Court stated in the Dismissal Order. See Exhibit "B" herewith appended.

This wanton statement from the Order greatly puzzles Appellant Martin with regard to other statements made by this Court elsewhere in the Order, especially after the fact that

- 2 -

Martin had alleged that the district court is biased.

3. On line 16, the Order said:"....conspired with Petitioner's defense counsel to prevent Petitioner from exercising his constitutional right to plead not guilty three times, ...." This statement from the district court is distinctly distorted. Even though Martin's native tongue is **not** English, this court-interpreted statement certainly twisted the true meaning of Martin's allegation. On page 2, section II(B)(9), Martin stated: " The prosecutor is a prevaricator, .... , and was in conspiracy with Martin's defense lawyer to augment the defendant's offense, for his exercising a constitutional right to plead 'not guilty' three (3) times. ..." The real meaning of this is nothing but: " Martin, exercising his constitutional right to plead 'not guilty' three times, was betrayed by his defense counsel who conspired with the prosecutor to increase Martin's offense." See line 16, 17, 18 of page 3.

4. the last paragraph of page 6 and on to page 7: "...Petitioner, however, has failed to specify which counts of the 80-count Indictment were impermissibly double-counted against him ...." Appellant Martin has abundantly demonstrated in his Motion 2255 pleadings that both the Indictment and Superseding Indictment are double-counting. Specific double-counting counts were enumerated in section I(1) on page 2 of Petitioner's Supplementary Reply/Traverse, dated July 9, 2007, as follows: (one single check is charged both as bank fraud and access device fraud) 9-**10**, 13-**14**, 18-**19**, 20-**21**, 22-**23**, 27-**28**, 30-**31**, 32-**33**, 34-**35**, 36-**37**, 38-**39**, 40-**41**, 42-**43**, 44-**45**, 46-**47**, 51-**52**, 54-**55**, 59-**60**, 61-**62**, 63-**64**, 65-**66**, 69-**70**, 72-**73**, resulting in an incredible volume increase of $136,035.63. E.g., the same check is charged in count 9 as bank fraud and in count **10**

as access device fraud, and the same with count 13 and **14**, and so
on, for a total of 23 counts of double-counting.

   The second paragraph on page 7, "Petitioner has failed to
show that the prosecution was prejudicial and vindictive against
him. Petitioner only makes mere accusations and gripes.... The
district court, by providing this argument, clearly affirms its
bias for the government. Petitioner Martin, in his Motion for COA,
clearly demonstrates in II(A)(1 to 9) that the prosecutor has
engaged in misconduct, vindictiveness and prejudicial prosecution.
Since the court itself denied Martin **Due Process** of the most basic
sort by not holding the Evidentiary Hearing and by being **inconsis-
tent with its ruling**, Martin was not afforded an apportunity to
prove his allegations which are **ALL TRUE**. The district court
avoided ordering the prosecutor to produce all the evidence favo-
rable to the defense, which are requested in Martin's Motion for
Evidentiary Hearing. The district court relied on the "papers"
only, which, to Martin, are perjured statements from Luu and the
government agents. And the court did use these perjured statements
to impose a harsh sentence on Martin. The interests of justice
are, **ERGO,** totally impaired and smeared in this instant case. More-
over, the  court  has been autocratic in all of its decisions and
rulings so far. Martin therefore has seen **"no justice"** in the court
system , the way the criminal proceeding has been conducted,
completely violating the United States Constitution.

   Luu has been shown to be the ring leader of 50 or more
criminals in Hawaii. Had this information been disclosed earlier,
would the district court still have erroneously assumed and presumed
the way it did? The government still conceals this evidence till now.

On the same page, page 7, line 17 and 18, the Order
stated: "Similarly, Petitioner has failed to demonstrate that
this Court was biased towards the government, or has committed
clear error in imposing his sentence.", see page 8, line 1.
Petitioner has some dilemma to find a proper response to this
Order statement. Since the Court chose not to address all the
appeal issues as raised in Martin's Motion for COA, section
II(D)(1-13) which indicate prejudicial allegations shown by the
Court, and which will be concurred by all jurists of reason,
Martin can only conclude that this statement from the Order
reaffirms Martin's claim that this Court is biased and peremptory
in both criminal and civil proceedings.

    5. Martin hereby takes leave to go back to page 2 of the Order,
line 15 and 16. The Order states: "On July 16, 2007, this Court
denied Petitioner's § 2255 Motion.". The correct date is August
16, 2007.

    6. The last paragraph on page 9 to line 15 on page 10: the
Court is autocratic and peremptory in this argument. The mitiga-
ting circumstances do exist as presented, and the reason the
PSR does not identify any is because the PSR is basically a
product of the vindictive prosecutor, who supplied the Probation
Office with all the aggravating evidence (all the so-called
dismissed counts, perjured statements from Luu and government
agents, etc..), and none of the mitigating circumstances. The
PSR is, **ergo,** completely erroneous, as abundantly demonstrated
in Martin's Amendment to Motion 2255, Request for Modification
of the Presentence Investigation Report, and this Court ignored

- 5 -

this request. The Court's Order statement on page 10, line 4 to
8 is also autocratic and peremptory. The aggravating factors are
created and painted by the vindictive prosecutor, who is also a
prevaricator, and who is good at concealing evidence favorable
to the defense, until this very date. As demonstrated, the prose-
cutor would use any evil means and/or ultra vires to obtain an
illegal and unjudicial conviction. He, ergo, engages in "injustice"
and/or "miscarriage of justice". In the case at bar, the prosecutor
charged Martin with many multiplicitous and double-counting counts
in both the Indictment and Superseding Indictment, which both
defense lawyer and the Court failed to raise objection and/or
question, and many of these counts (as alleged in 2001 to June
2002) are legitimate transactions. Since Martin's defense lawyer
was so ineffective and overwhelmed with 60 cases, he would not
file any motion, despite arduous instructions to him, to demand
evidence of these counts. Martin was, ergo, prejudiced by his
incompetent public defender who did not seem to know any law,
since he never used any, despite 40 years of law practice.

    The Court's Order, on line 8 through 15, page 10,
accused Martin of "... he does not accept responsibility for his
crimes .... "his denial of responsibility for his crimes ...."
In this particular statement, the Court failed to add: "AND THE
CRIMES OF LUU ALSO.", because this is exactly what the government
was set out to do, blaming Martin for all of Luu's crimes (wire
fraud charges in all three charging documents, mail theft, cons-
piracy, etc ...). The U.S. Attorney's Office even provided the
local newspaper with a news release naming Abraham Martin as

- 6 -

one of the national ID thieves (instead of Luu who is the kingpin
in all types of white collar crime, and who is the ring leader,
supervisor, manager in charge of 50 or more criminals in Hawaii).
Martin is, ergo, prejudiced by the biased district court in this
respect. Martin never appealed his first offense sentence in 1999,
since it was just and fair, under Judge Susan Mollway (12/14/1999).
Moreover, this accusation further affirms Martin's allegation in
II(D)(5) that the district court is repulsive to the truth or true
facts if these were raised by the defendant in his/**her** own theory
of defense. Not only Martin was entrapped by Luu into committing
the offense, but also many others, such as "Michael" (1660 Piikoi
Street; Lim Kwon, ex-judge, ex-movie star is the landlord), Hue,
Cuc Nguyen, Jane Nguyen, etc...), as already pointed out in Motion
2255 pleadings.

    7. Regarding the U.S.S.G. § 5H1.6 circumstances to consider
for departure, Commentary Note (1)(B)(i - iv), Appellant Martin
will meet the conditions of guidance. The Court's argument on page
13 is based on the court's assumption and presumption, since the
court is **not** Abraham or Anna, and the court certainly has not been
suffering from the agony, suffering, hardship, pain, loneliness,
worries which both Abraham and Anna have been going through. If
Judge David Alan Ezra and his wife were in Abraham's and Anna's
shoes, this argument would not hold. In a Vietnamese family, the
husband is the principal bread-earner and supporter. Martin has
been the main family supporter and caretaker, and has been caring
for his sick wife since the beginning of year 1999. Moreover,
Anna has frequent nocturnal seizures, as certified by her doctor,

it is therefore a must for her to have her husband at her side
when nocturnal seizures take place, to immediately transport her
to a hospital emergency room to be saved by medical experts. No
one else can replace her husband for this particular obligation.
Anna also suffers from occasional paralyzation of her limbs, neck,
back and a terrible headache. She needs her husband, who is also
a Vietnamese martial arts instructor who has special massage
skills to perform instant massage over the pain area(s) to alle-
viate the suffering. As far as financial burden is concerned,
Anna has to live day by day without any income and with overwhel-
ved worries. Even though she is temporarily supported by her
two children, she suffers tremendously due to all kinds of sacri-
fices have to be made, depriving her of the basic life and enjoy-
ment. The family expenses and other financial obligations outweigh
the maximum support which her two children can provide. Further-
more, her children have the lives of their own, being grown-up
in the United States; the family doctrine of which is individualism
and selffishness. Their support can fall short any time, either
dictated by their own lives or by other events and circumstances.
Judge David Alan Ezra would never understand, since he has been
known among inmates from Hawaii as the "hanging judge"; and the
fact that he has been known to hate the "Vietnamese", probably
being racially-biased. He has treated Vietnamese in his court
room in a manner similar to "Hitler" treating the Jews in World
War II. A law firm in Honolulu has been watching this fact for
quite a number of years now. Maybe the most recent overturned
conviction in **USA v. Wood** from 9th Circuit will ring the bell.

- 8 -

8. Ineffective Assistance of Counsel: (on page 14 of the Order) Since the district court is biased, Appellant Martin finds it unnecessary to mention much here. An attorney who has never provided "active and adversarial" protection for his client is simply ineffective and incompetent. A client who has placed his full trust in his defense lawyer who later turned around to "sell him alive" is known to be "betrayed" by his lawyer. A conscientious and decent lawyer would "never" betray his client by turning around and provided the prosecutor with an affidavit (or declaration) in an effort to assist the latter in the unjudicial, unlawful and vindictive prosecution and conviction. The provided declaration contains deceitful information and prevarications, unfortunately. Only and only men without dignity would do this, without shame. As Martin mentioned earlier in his various motion 2255 pleadings, **"birds of the same feather flock together"**, and cover-ups have taken place here in the Hawaii District Court.

In accusing Martin of his failure to raise convincing argument in motion 2255 and motion for COA, the Court failed to mention that it violates Martin's Fifth Amendment Due Process Clause by **"not holding an evidentiary hearing"**, thereby suppressing Martin from proving his allegations, in this particular issue or any other issue, to be **true.** The Court has avoided ordering the government, as requested in Martin's motion for evidentiary hearing, the various documents as mandated by **Brady, Jencks, section 3500,** etc .. because the Court erred in using the incorrect information to sentence Martin. The Court is, ergo, repulsive to the truth, simply because Martin's allegations are **true,** as claimed in his

- 9 -

Motion for COA, section II(D)(5) on page 6.

B. <u>POINTS AND AUTHORITIES</u>

1. Multiplicity and Double-Counting:

"Double-counting occurs when identical conduct is described in two different ways so that two adjustments apply." **United States v. Haines**, 32 F.3d 290 (7th Cir. 1994). "...double-counting violated Eightth and Fourteenth Amendments." **Collins v. Lockhart**, 754 F.2d 259 (8th Cir. 1985). In this instant case, the prosecutor engaged in this misconduct, to exaggerate the offense in both the Indictment and the Superseding Indictment. See Exhibit "C" appended.

"Multiplicity is charging a single offense in more than one count in an indictment. Accordingly, it 'addresses double jeopardy; and where the jury is allowed to return convictions on multiplicitous counts, the remedy is to remand for resentencing, with the government dismissing the counts that created the multiplicity.'" **United States v. Galvan**, 949 F.2d 777, 781; **United States v. Lemons**, 941 F.2d 309, 317 (5th Cir. 1991) (quoting **United States v. Moody**, 923 F.2d 341, 347 (5th Cir.) cert.denied, ___U.S.___ 116 L.Ed.2d 54 (1991). Due to ineffective and betraying defense counsel, no objection was raised before sentencing. See Exhibit "C" attached. Moreover, Martin's offense occured during a short period of approximately 7 months, late June 2002 to early January 2003, when Luu gave him mostly credit card access checks and directed him where to go to open bank accounts and deposit them. So basically one type of offense was involved here, access checks. In **Whalem v. United States, 445 U.S. 684, 63 L.Ed.2d 715, 731, 100 S.Ct 1432 (1980)**, the Supreme Court stated: "In **Crepps v. Durden**, 2 Cowd., 64-0, 98 Eng.Rep.1283(K.B.1977), Lord

Mansfield, writing for a unanimous court, held that the sale of
four loafs of bread on Sunday in Violation of a statute forbidding
such sale constituted one offense, not four. According to Lord
Mansfield: "If the Act of Parliament gives authority to levy but
one penalty there is an end to the question ....".

In **United States v. James**, 980 F.2d 1314 (9th Cir. 1992),
the Ninth Circuit held: (1) each count of indictment must stand
on its own and cannot base its validity on allegations on any
other count not specifically incorporated; and (2) generally,
failure of indictment to deal with each element of charged offense
is fatal defect. So if indictment is multiplicitous, and thereby
defective, if single offense is alleged in a number of counts, un-
fairly increasing defendant's exposure to criminal sanctions. See
**United States v. Hord**, 6 F.3d 276 (5th Cir. 1993).

In the case at bar, Appellant Martin suffered not only
"double-counting and multiplicity  of counts, but also "**triple** or
**quadruple-counting,** as explained in Exhibit "A" attached to
"Appellant's Statement of the Record on Appeal to the Court of
Appeals for the Ninth Circuit", dated November 13, 2007.

3. Constructive Amendment to Indictment:

Constructive Amendment to Indictment, also referred to
as "amendment of indictment", is defined in Black's law dictionary
as "the alteration of the charging terms of an indictment, either
literally or in effect, after the grand jury has made a decision
on it. The indictment usu. cannot be amended at trial in a way
that would  prejudice  the  defendant  by  having  a  trial  on
matters that were not contained in the indictment. To do so would
violate the defendant's Fifth Amendment right to indictment by

grand jury.". In the case at bar, the prosecutor engaging in ultra
vires and vindictiveness in his prosecution, constructively amended
the Superseding Indictment which itself is multiplicitous and
double-counting, without respect and regard for the law, by draf-
ting such an unconstitutionally evil plea agreement containing two
counts of the Information, practically modifying the  terms of the
Superseding Indictment. He then coerced Martin into entering, plead-
ing guilty to it, or else Martin's wife would be taken to trial.
Martin's wife was innocent but was helpless and defenseless,
Martin had no choice but agreed, under the advice of his incompe-
tent and disloyal counsel. In **United States v. Molinaro**, 11 F.3d
853 (9th Cir. 1993), the Ninth Circuit held that the Fifth Amendment
requires that defendant be tried only on charges handed down by
grand jury and thus, after indictment has been returned, its char-
ges may not be broadened through amendment except by grand jury.
Amendment of indictment occurs when defendant is convicted of
charges not included in indictment, and is per se reversible error.
See **United States v. Pacheco**, 912 F.2d 297 (9th Cir. 1990). In
**United States v. Bryser**, 954 F.2d 1458 (2nd Cir. 1992), the Second
Circuit held that constructive amendments to indictment are gene-
rally considered prejudicial per se, thereby requiring a new trial.
The Second Circuit further stated "constructive amendments of
indictment are per se violations of the Fifth Amendment that require
reversal even without showing of prejudice. **United States v. Delano**,
55 F.3d 720 (2nd Cir. 1995); **United States v. Mollica**, 849 F.2d
723, 730; **United States Clemente**, 22 F.3d 477, 482 (2nd Cir.) cert.
denied, __ U.S. __, 115 S.Ct. 258, 130 L.Ed.2d 178 (1994); **United
States v. Weiss**, 752 F.2d 777, 787 (2nd Cir.) cert. denied, 474

U.S. 944, 106 S.Ct. 908, 88 L.Ed.2d 285 (1985). The plea agree-
ment, based upon onstructive amendment to indictment, is therefore
unconstitutional and requires reversal. Moreover, the Ninth and
Third Circuits held: "Defendant cannot be convicted for offense
that was not included in the indictment.**United States v. Douglas,**
974 F.2d 1046 (9th Cir. 1992) and **United States v. Werme,** 939 F.2d
108 (3rd Cir. 1991). See also **United States v. Steele,** 117 F.3d
1231 (11th Cir. 1997) and **United States v. Cancelliere,** 69 F.3d
1116 (11th Cir. 1995).

    4. Multiplicity of Sentences:

      In **United States v. Dixon,** 273 F.3d 636 (5th Cir. 2001),
the Fifth Circuit stated: "Complaint about multiplicity of sen-
tences can be raised for the first time on appeal." In this ins-
tant case, the multiplicity of sentences was a product of the
prosecutor's vindictiveness, misconduct and disregard for the
law and the integrity of the United States Government, by enga-
ging in the constructive amendment to indictment as elaborated
in the previous paragraph (3). Therefore, judgment in a criminal
case, Cr. No. 05-00049-01, is unconstitutional and requires
reversal.

    5. Violation of Rule 11 - Plea:

      Appellant Martin has abundantly demonstrated that he
was prejudiced by the unconstitutionally evil plea agreement.
Not only did he receive none of fair plea bargaining but also
was coerced into pleading guilty to it, which is built on cons-
tructive amendment to indictment. Since Martin's defense lawyer
was disloyal and did not seem to know any law, he raised no objec-

tion whatsoever but instead acquiesced in the prosecution's mis-
conduct and vindictiveness. Martin was severely prejudiced as a
result. In judging the validity of guilty pleas, determinative
factors, inter alia, are:

    a. right to effective counsel;
    b. requirement that plea be made voluntarily:
    c. factors bearing on character of plea as voluntarily made:
        i. coercion
        ii. threats or intimidation
        iii. promises and plea bargaining
        iv. deception or trick
        v. motivation/circumstances of accused (innocent sick
           wife being coerced as well)
        vi. other factors, etc...
    d. requirement that plea be made intelligently;
    e. factors bearing on character of plea as intelligently made:
        i. competency of accused when entering plea
        ii. accused's understanding of nature of charges
        iii. accused's understanding of consequences of plea
        iv. competence of counsel
        v. other factors, etc...
    f. requirement that record disclose that plea was made volun-
       tarily and intelligently
    g. effect of Rule 11 of Federal Rules of Criminal Procedure
    h. effect of fact that plea constitutes waiver of certain cons-
       titutional rights
    i. miscellaneous factors at time of plea as affecting defen-
       dant's constitutional rights

    In the case at bar, many prosecutorial violations have
been detected and shown in the civil procedding of Motion 2255,
and it will be a redundancy to repeat them here. Furthermore,
Martin is a non-lawyer, ignorant of criminal law or with a super-
ficial knowledge of it, hereby refrains from **"teaching monkeys
how to climb a tree"** (showing lawyers  about the law). However,
a few law cases are presented here in this regard. The plea agree-
ment is invalid by subjecting defendant to some form of coercion,
violating  defendant's constitutional rights. **Kercheval v. United
States,** 274 U.S. 220, 71 L.Ed. 1009, 47 S.Ct. 582 (1927); **Parker
v. North Carolina,** 397 U.S. 790, 25 L.Ed.2d 785, 90 S.Ct. 1458

- 14 -

(1970); **Brady v. United States**, 397 U.S. 742, 25 L.Ed.2d 747, 90
S.Ct. 1463 (1970). The Supreme Court further said that due process
forbids convicting a defendant on the basis of a coerced guilty
plea. See **United States v. Jackson**, 390 U.S. 570, 20 L.Ed.2d 138,
88 S.Ct. 1209; **Waley v. Johnson**, 316 U.S. 101, 86 L.Ed. 1302, 62
S.Ct. 964 (1942). Attention is called to the fact that by amendment
in 1966, the requirement was added to Rule 11 of the Fed.R.Crim.P.,
that a court shall not accept a plea of guilty without first deter-
mining that the plea is made with the understanding of the conse-
quences of the plea. A number of Supreme Court decisions have held
and recognized that a guilty plea, in order to be valid, must have
been made by the accused with an understanding of the consequences.
See **Id. supra**. In **Carter v. Illinois** (1946), 329 U.S. 173, 91 L.
Ed. 172, 67 S.Ct. 216, the Supreme Court noted that the "racial
handicap of the defendant was a factor which might suggest funda-
mental unfairness in the proceedings before the trial judge at the
time the defendant pleaded guilty. Furthermore, under Rule 11, the
sentencing judge must develop on the record, the factual basis
for a guilty plea, as, for example, by having the accused desbribe
the conduct that gave rise to the charge. **Santobello v. New York**,
404 U.S. 257, 30 L.Ed.2d 427, 92 S.Ct. 495. Noncompliance deprives
the defendant of the Rule's procedural safeguards, and district
court accepts his guilty plea without fully adhering to the proce-
dure provided for Rule 11, his conviction must be reversed. See
**McCarthy v. United States**, 394 U.S. 459 (1969); **United States v.
Boone**, 543 F.2d 1090 (4th Cir. 1976). Moreover, in **United States
v. Ruiz**, 536 U.S. 622 (2002), the Ninth Circuit pointed out that
the Constitution requires prosecutors to make certain impeachment

information available to a defendant before trial. It decided
that this obligation entitles defendants to receive the same infor-
mation before they enter into a plea agreement. The Ninth Circuit
also decided that the Constitution prohibits defendants from
waiver their right to that information. And it held that the pros-
secutors' standard "fast track" plea agreement was unlawful because
it insisted on that waiver. See also **Brady v. Maryland**, 373 U.S.
83, 10 L.Ed.2d 215 (1963), in which "Due process requires prose-
cutors to 'avoi[d] ... an unfair trial' by making available to an
accused ... where the evidence is material either to guilt or to
punishment". In the case at bar, the prosecutor has concealed all
evidence favorable to the defense till this very date and the
court has avoided ordering the government to produce all the docu-
ments favorable to the defense, as requested in Appellant Martin's
Motion for Evidentiary Hearing.

5. Presentence Investigation Report (PSR):

The PSR in this instant case is groasly prejudicial,
erroneous and unconstitutional. Martin provided his analysis of
the PSR in his Amendment to Motion 2255. The PSR, first of all,
contains the prosecutorial constructive amendment to indictment,
(which is the Information, already superseded by the Superseding
Indictment) and it is therefore unconstitutional and must be
modified. Secondly, the PSR contains perjured testimonies from
Luu and government agents and other maliciously incorrect infor-
mation provided by the prosecutor to exaggerate Martin's offense,
as affirmed by the Probation Officer in paragraph 180, page 47
(offense level was calculated based on **ALL COUNTS** of the Infor-
mation and Superseding Indictment, or 90 counts), increasing the

- 1 6 -

supposedly offense level 15 or less, to total offense level of 21,
or 6 to 8 levels unlawfully and unjudicially increased. Luu's
crime (wire fraud charges) is also included in this erroneous
total offense level, namely USSG § 2B1.1(b)(9)(C), sophisticated
means done by Luu. Since the total actual loss volume is between
$70,000 to $120,000, USSG § 2B1.1(b)(E) is more appropriate than
2B1.1(b)(G) as stated in the PSR, page 37. Appellant Martin, again,
cannot take responsibility for Luu's crime and the prosecutor's
malicious misconduct in this instant case. It will be unfair.

   6. The Evidentiary Hearing Issue:

        A petitioner on federal habeas corpus is entitled to an
evidentiary hearing where the petitioner establishes a "colorable"
claim for relief, and where the petitioner has never been accorded
a state or federal hearing on his claim. **Earp v. Oronski**, 431 F.3d
1158, 1167 (9th Cir. 2005), citing **Townsend v. Sain**, 372 U.S. 293
(1963) and **Keeney v. Tamayo-Reyes**, 504 U.S. 1, 5 (1992). In stating
a "colorable" claim, a petitioner is merely required to allege
specific facts which, if true, would entitle him to relief. Ibid.
In sum, an evidentiary hearing is required under the AEDPA and an
appellate court will remand for a hearing if the district court
rules without granting one - "where the petitioner establishes a
colorable claim for relief and has never been accorded a state or
federal hearing on his claim. **Earp**, supra, at 1167. In the case
at bar, Martin was granted a hearing but then the court changed
its mind, being **inconsistent with its ruling**, would not hold the
hearing. The court is ergo repulsive to the truth and true facts
since it is already well aware that Martin's allegations are true.

- 17 -

Moreover, the Ninth Circuit also stated: "Where a state court makes evidentiary findings without holding a hearing and giving petitioner an opportunity to present evidence, such findings clearly result in an 'unreasonable determination' of the facts". **Taylor v. Maddox**, 366 F.3d 992, 1001 (9th Cir. 2004; also **Earp**, supra at 1167.

7. The Restitution Issue:

On page 50 of the PSR, restitution amount shown as $ 5,324.53 (Hawaii National Bank), $16,455.62 (Chase Manhattan Bank), $ 4,620.00 (Tai Seng Video), $8,670.00 (Asia View Entertainment) and $2,079.66 (D.M. count 17). In fereting  through the records and investigation, Appellant Martin discovers that the amount $5,324.53 is unjustified since it is not an offense in the Superseding Indictment (a civil matter), $16,455.62 is questionable and requires proof, $4,620.00 is unjustified since the cost for each second VHS tape is only $1.50 (certainly not $10), and the same goes for $8,670.00 (these two particular amounts will need proof or demand letter from counsel of Tai Seng and Asia View), and finally $2,079.66 which a letter of demand is required for verification. For the amount $16,455.62, the government already confiscated the two vehicles, Mercedez and Subaru, despite the fact that Martin already made legitimate payments for many years. In **United States v. Gaytan**, 342 F.3d 1010 (9th Cir. 2003), the Ninth Circuit held that restitution in a criminal case may only compensate a victim for actual losses caused by the defendant's criminal conduct. Federal courts cannot order restitution in a criminal case without a statutory basis. **United States v. Lachowski**, 405 F.3d 696 (8th Cir. 2005); **United States v. Akande**,

200 F.3d 136 (3rd Cir. 1999). In **United States v. Tran**, 234 F.3d 798 (2nd Cir. 2000), the Second Circuit held that improperly ordered restitution constitutes an illegal sentence amounting to plain error. See also **United States v. Thompson**, 113 F.3d 13 (1997)

8. Mitigating Circumstances Issue:

Since the prosecutor painted the picture of a "nasty criminal" and cloaked it over Martin, based on Luu's crimes, Martin was prejudiced and appeared to lose the image of a man of dignity and honor. And yet, Martin does not prevaricate and is not cruel in nature like other perverted and phony people who would never see "a straw in their own eyes". Martin committed the offense just because he ran into Luu. Since Martin's wife is sick and he has to be close to her most of the time, Martin already has a great plan, which is "writing books" (presently he has already started a book entitled **"The Vietnamese Legionaires"** with a chapter on the famous "Battle of Dien Bien Phu". The second book, **"The judge and I"** will be started right after Martin turns in the "Opening Brief" to Ninth Circuit. By writing books, Martin can really take care of his sick wife, day and night, especially in case of sudden seizures. Anna is highly vulnerable to seizures and immediate and emergency care has to be provided, to save her. At the moment, she is mostly by herself, which fact is not recommended by her personal doctor. Martin is therefore the only person who can perform this task. Moreover, Anna's health conditions and blood sugar count will be more stable when her husband is with her, giving her massage and doing household chores to assist her, while writing books. See Exhibit "D" herewith appended. Martin is terribly remorseful for his actions and the effect the incarceration would have on Anna.

He is irreplacable in caring for his sick wife, and provide main support for the family before incarceration. Even though his two children have tried to be in his place, they just cannot entirely replace him, due to the fact that they are adults and have their own lives to tend to, anytime at all. Moreover, their support is no way adequate to Anna the way her husband was to her. See **United States v. Hussein**, 478 F.3d  318 (6th Cir. 2007); **United States v. Petrelli** (2004, SD NY) 506 F Supp. 24 449.

<u>CONCLUSION</u>

By providing the above Analysis of the District Court Order denying motion for COA, Appellant Martin has tried his best to point out facts which may assist the court to comprehend the picture of the case and circumstances.

DATED: Lompoc, California this 21st day of December 2007

Respectfully submitted,

_____
Abraham Martin
Pro Se Appellant