ANALYSIS OF THE ORDER DENYING PETITIONER'S
PETITION FOR MODIFICATION OF SUPERVISED RELEASE

UNITED STATES OF AMERICA vs. ANNA ANH MARTIN, CR. NO. 05-00049-02DAE

On February 25, 2008, District Court Judge David Alan Ezra signed on Order denying Defendant-Petitioner Anna Martin's Motion for Modification of Supervised Release pursuant to 18 U.S.C. § 3583(e)(1), which Motion filed on or about January 25, 2008.

The Order appears to violate Federal Rules of Criminal Procedure, since the Court disposed of the matter without a hearing, to start off the Order.

The Order then accused, without due process and without a preponderance of the evidence either found guilty by the jury or admitted by the defendant, the defendant of "stealing convenience checks from a mail box and forging an access device check to maintain an automotive loan account. Defendant also, along with her husband and sister, managed a video business that rented pirated videotapes." Nothing can be more erroneous than this unfounded accusation. This clearly shows that the District Court is biased for the government, relying on its perjured statements, maliciously incorrect information to sentence the defendant, imposing a miscarriage of justice on a minority-group, disadvanatged individual with a lifetime sickness of diabetes Type I. Anna's husband, Abraham Martin, has clearly demonstrated that the government fabricated evidence to harm Anna Martin, because he admitted that him and him alone, deposited the access device checks provided to him by Luu's entrapment scheme. Abraham also admitted that him and him alone, did copy the tapes and he had to utilize a large number of VCR's to save time and labor, for whatever tapes sent by the distributors.

- 1 -

EXHIBIT "A"   (8 pages)

As far as mail theft is concerned, Luu has been demonstrated to be a nefarious ring leader and master criminal for over 25 years, in charge at any one time at least 50 or more criminals in Hawaii. The Order further stated in the second paragraph that it ordered restitution of $29,745.62 to be paid jointly with co-defendant and husband Abraham Martin. The Court evidently failed to consider 18 U.S.C. § 3553(a) to sentence the defendant, the Court failed again to consider mandatory factors in ordering restitution upon the defendant, who had to wear an insulin pump to survive, and who had never had any employment since she was supported by her husband all the time.

In the third paragraph, the Court stated that "Additionally, a January 5, 2007 letter from Defendant's doctor indicates that Defendant ... The doctor's only request was that Defendant be given a couple of months before being pressured to work so that she could adjust and attend to her medical issues. The probation office has granted this request." Dr. Michael Bornemann, Defendant's doctor, certainly has no right of life or death over his patient. Neither does the probation officer, nor the District Court. His ex-parte communication to the probation office is totally unethical, illegal, unlawful, unjudicial. He too, acquiesces in the dictation of the court system. He, too, is too ignorant to consider the numerous mandatory and statutory factors before "**pressuring** a sick, minority-group, disadvantaged individual to work". Who would be bearing the responsibility if something happens to the Defendant? Who would be willing to hire a criminal and a sick person without education and experience in America? Moreover, the doctor himself made a gross

mistake in the diagnosis of the defendant's sickness in early January 1999, at the St. Francis Hospital on Liliha Street, Honolulu. At that time, Defendant Anna Martin was admitted into the Emergency Room where her blood sugar was found out to be over 800, and she had been in coma status. Meanwhile her personal family doctor, Dr. Ronald Perry came in, along with Dr. Michael Bornemann who was in charge of the Diabetes' Center, right at St. Francis Hospital. After four days, when her blood sugar was above 400 level, as acknowledged by the attending nurse, Anna was released from the Intensive Care Unit, at the order of Dr. Bornemann, who gave her a subscription for **diabetes type II.** Less than 24 hours after reaching home, Anna was once again transported to the same emergency room, due to the doctor's erroneous diagnosis and wrong medicine subscribed.

The Order last paragraph on page 3 demonstrates that the District Court delegated the authority to the probation office "to ensure that she makes appropriate payments."

POINTS AND AUTHORITIES

A. <u>18 U.S.C. §§ 3583 and 3553</u>

§ 3583(e) states, "The court may, after considering the factors set forth in section 3553(a)(1)...(a)(2)(D)...". Sub-section 3553(a)(2)(D) states, "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. What an idealistic law! The truth was, none of these happened, except the mediocre medical treatment, which caused Anna to suffer 15 seizures while being incarcerated at Carswell Medical Center. Judge David Alan Ezra therefore failed to understand and to consider the statutory factors of § 3553(a). Anna received none of the necessary educational and vocational

training as mandated by § 3553(a)(2)(D) as to rehabilitation. Also, § 3583(e)(1) refers to the provisions of the Federal Rules of Criminal Procedure to "terminate a term of supervised release ..."

B. <u>Rule 32.1(c) of the Federal Rules of Criminal Procedure</u>

Fed.R.Crim.P. Rule 32.1(c)((1) states, "Before modifying the conditions of probation or supervised release, the court **must hold a hearing**, at which the person has the right to counsel and an opportunity to make a statement and present any information in mitigation." The District Court disregarded this Rule and made a ruling pursuant to its Local Rule 7.2(d), which is a violation of the national Rule. Rule 32.1(c)(2) further states that, "A hearing is not required if: (A) the person waives the hearing; or (B) the relief sought is favorable to the person....; and (C) an attorney for the government has received notice of the relief sought, has had a reasonable opportunity to object, and has not done so" The District Court's ruling without holding the hearing violated Defendant's Due Process, as mandated by the Fifth Amendment to the U.S. Constitution. Moreover, the District Court showed bias for the government, which already imposed a lien on the Defendant's property back in February 2006, in the amount of $29,745.62, and which was well aware that the Defendant's ability to pay is none, since she is sick and has no education, work experience to seek decent employment. What a vindictive prosecution!

C. <u>18 U.S.C. §§ 3663 and 3664</u>

Needless to say, Judge David Alan Ezra failed to consider the statutory factors in §§ 3663 and 3664, and mandated by VWPA in ordering restitution upon the Defendant. 18 U.S.C. § 3664(f)(1)(B)(2).

- 4 -

See **United States v. Giwah**, 84 F.3d 109, 114 (2nd Cir. 1996). "If the record fails to demonstrate that the court considered these mandatory factors, then this court will vacate the restitution order." Id. Moreover, "[e]ven if the [presentence report] adequately considers the [statutory] factors, that fact alone is not enough to insulate a restitution order from being vacated by this court." Id. See also **United States v. Davis**, 117 F.3d 459 (11th Cir. 1997); **United States v. Akande**, 200 F.3d 136 (3rd Cir. 1999); **United States v. Gaytan**, 342 F.3d 1010 (9th Cir. 2003) and **United States v. Lachowski**, 405 F.3d 696 (8th Cir. 2005). 18 U.S.C. § 3664(a).

It has been settled law that a district court judge is not permitted by § 3663 to delegate to the probation office the specification of a payment schedule. See **United States v. Yahne**, 64 F.3d at 1097 (citing **United States v. Murphy**, 28 F.3d at 42) (citation omitted). See also **United States v. Miller**, 77 F.3d 71, 77-78 (4th Cir. 1996); **United States v. Johnson**, 48 F.3d 806, 808-09 (4th Cir. 1995). "[I]n every delegation, the court must retain the right to review findings and to exercise ultimate authority." Id. at 809.

Last but not least, the restitution order has been disputed by Abraham Martin, co-denfendant as being improper. And "improperly ordered restitution constitutes an illegal sentence amounting to plain error." **United States v. Tran**, 234 F.3d 798 (2nd Cir. 2000); **United States v. Thompson**, 113 F.3d 13 (2nd Cir. 1997). A district court's failure to make a restitution order with which a defendant could possibly be expected to comply threatens respect for judicial orders generally.". See **United States v. Remillong**, 55 F.3d 572, 574 (11th Cir. 1996) (per curiam); **United States v. Bailey**, 975 F.2d

1032 (4th Cir. 1992). Furthermore, the Ninth Circuit has observed: "[I]t is vital to the success of rehabilitation that the restitution obligation imposed upon the defendant ... be one the defendant is capable of satisfying." **United States v. Ramilo**, 986 F.2d at 336 (relying in part on **United States v. Mahoney**, 859 F.2d at 52). Speaking of rehabilitation, the legal justice system totally failed in this task. Petitioner Anna Martin received none. Her efforts to learn a trade on her own have been thwarted by her probation officer, who adamantly insists on the payment of restitution, well aware that Anna is sick, does not have a GED, does not have a trained skill, and has never worked for any company in this country. Petitioner Anna just wanted to attend a barbers' school in Honolulu, to learn a trade so that she could earn some money to survive and pay restitution. The probation officer flatly denied her request to seek a loan of $10,000 or thereabout to pay for tuition, books and tools. This, of course, defeats the purpose of rehabilitation as intended by Congress and portrayed in various statutes and rules.

It is also settled law that **credits and offsets** should have been considered by the District Court in imposing a restitution amount. The amount of $16,455.62 (Chase Manhattan Bank, or to be more correct, $9,400 Chase Manhattan and $7,055.62 Sears National Bank access checks which were given to co-denfendant by Luu's entrapment scheme) was deposited into FHB to pay for the Subaru, and the government already confiscated not only this vehicle, but also the Mercedes. Petitioner had paid in approximately $10,000 for the Subaru and $35,000 for the Mercedes, or a total of $45,000.00. In **United States v. Gaytan**, the Ninth Circuit held that "Restitution in a criminal case may only compensate a victim for actual losses caused by the defendant's cri-

minal conduct.". The Ninth Circuit further held that " Because forfeitures are disfavored, forfeiture laws and their notice provisions are strictly construed against the government." See **United States v. Ritchie**, 342 F.3d 903 (9th Cir. 2003). A far as restitution of $13,290.00 goes (Tai Seng & Asiaview Entertainment), these two companies did not lose any money, since they already made money selling their first copies at a high price (between $15 and $25 per VHS tape). The second VHS tape on costs only $1.50 per tape and it was Abraham Martin who suffered a loss of $3,000 per month to keep Tan Tien Video in business, so that Anna's sister could a have a decent job, instead of working in a bar. Moreover, Abraham had tried hard to sell the store at a loss, but no offer came close. Abraham therefore lost not only his initial investment money to buy the store ($60,000) but also all the improvements to the store, monthly deficits, amounting to a total loss of approximately $152,000 for over 2 years. The Ninth Circuit also ruled that "Criminal forfeitures, as a form of monetary punishment, are subject to the Eightth Amendment's limitations under the Excessive Fines Clause." **United States v. Ladum**, 141 F.3d 1328 (9th Cir. 1998. See also **Alexander v. United States**, 509 U.S. 544, 559, 125 L.Ed.2d 441, 113 S.Ct 2766 (1993). Moreover, these two video companies did not request for any restitution, the government did, which also seized original tapes valued at approximately $15,000.00 or thereabout, besides the miscellaneous equipment and accessories, valued at approximately $25,000.00, in an illegal search and seizure for **two days**. Credits and offsets, ergo, should have been considered and deducted from the restitution amount. See **United States v. Clack** (1992, CA9 Cal), 957 F.2d 659 92 CDOS 1371, 92 Daily Journal DAR 2252.

CONCLUSION

Based on the foregoing reasons, points and authorities, Petitioner Anna Martin's motion for modification of supervised release should have been granted, for her to seek her own rehabilitation and employment, and the fact that the Government has imposed a lien on her property for the full amount of restitution and a regular monthly payment has been made steadily toward restitution responsibly since January 2006 while being incarcerated at Carswell Medical Center.

DATED; Lompoc, California   March 18, 2008

*[signature]*

_____
Abraham Martin
Co-Denfendant-Appellant